IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 07028 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Steven W.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 21, Pl.'s Mot.] is GRANTED, and the Commissioner's cross-motion for summary judgment [dkt. 25, Def.'s Mot.] is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On September 28, 2018, Plaintiff filed a claim for DIB, alleging disability since February 2, 2014, the date he had a defibrillator placed due to his heart condition (chronic heart failure and recurrent arrythmias). [Dkt. 16-1, R. 103, 109.] Plaintiff also was diagnosed with COPD, sleep apnea, and degenerative disc disease. [R. 117.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 123, 137.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone (due to the COVID-19 pandemic) on March 18, 2020. [R. 40-98.] Plaintiff personally appeared by telephone, testified at the hearing, and was represented by counsel. [R. 40-98.] Vocational expert ("VE") James Breen also testified. [R. 89-97.] After the ALJ hearing, Plaintiff, through his counsel, amended the alleged onset date to November 1, 2018. [R. 17.]

On May 8, 2020, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 14-34.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 17-34.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of November 1, 2018. [R. 19.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative joint disease of the cervical spine; chronic obstructive pulmonary disease (COPD); obstructive sleep apnea; chronic heart failure; and cardiac

2

dysrhythmias. [R. 19.] The ALJ further noted that Plaintiff had suffered a fall in September 2019 that resulted in upper right flank pain, and that a CT scan of his chest and abdomen after the fall showed three rib fractures, nondisplaced transverse process fractures on the right side, retrolisthesis (an injury where a vertebra slips backward in the spine), and severe foraminal stenosis. [R. 20.] Despite indications in the record that these more recent injuries may have caused further impairment beyond what Plaintiff had originally described in his application for benefits,[3] the ALJ concluded that, based on the available evidence, it was not possible to determine whether the spine fractures were severe impairments that imposed more than minimal limitations on the claimant's ability to work for at least 12-consecutive months.

The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 21-28.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: no more than frequent (as opposed to constant) climbing on stairs, stooping, crouching, kneeling or crawling; never climbing of ladders, ropes, or scaffolding; no work requiring balancing; no work in hazardous environments, such as work that required driving, operating moving machinery, working at unprotected heights, and working around exposed flames or unguarded large bodies of water; avoid exposure to excessive vibration either in the form of vibrating hand tools or vibrating surfaces; avoid concentrated exposure to extreme heat

---

[3] At the telephonic hearing, Plaintiff explained that he had been treated by the emergency department at Northwestern Memorial Hospital the week prior, after experiencing numbness and pain in his arms for the past month and a half that left him unable to grip anything. [R. 53-55.] He explained that his physician had advised him that he required neck decompression surgery, which had been scheduled for April 2020, and had directed him not to drive and to wear a cervical collar in the interim. [R. 53-54, 57.]

3

or cold as well as pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. [R. 28.]

At step four, the ALJ concluded that Plaintiff would not be able to perform his past relevant work as a pipe fitter. [R. 32.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including hand packager and office helper, leading to a finding that he is not disabled under the Social Security Act. [R. 32-33.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir.

4

2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673

(7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues broadly that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly evaluate the opinion of the Plaintiff's treating cardiologist, Dr. Santosh K. Gill. [Dkt. 21, Pl.'s Mem. at 9-13.] At times, this argument veers towards asking this Court to substitute its own evaluation of the medical evidence, which this Court is not permitted to do. *Elder*, 529 F.3d at 413. However, the Court does find that the ALJ failed to adequately explain his reasons for rejecting certain key aspects of Dr. Gill's opinion regarding reaching, lifting, and standing/walking limitations. Because these failures alone warrant remand, the Court does not reach Plaintiff's additional arguments.

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the opinions of treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c. The "most important factors"—and the only factors that the ALJ is required to discuss in his decision—are supportability and consistency. 20 C.F.R.

6

§ 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

In November 2018, Plaintiff's treating cardiologist of several years, Dr. Gill, filled out a two-page "physical assessment" questionnaire that contained several opinions about Plaintiff's capacity for work. [R. 652-53.] The ALJ rejected this document as unpersuasive, and the entirety of the ALJ's discussion of the document is as follows:

> The interventional cardiologist, Santosh K. Gill, M.D., managing the claimant's cardiac-related treatment completed a *Physical Assessment* questionnaire about the claimant in November 2018 (Exhibit 5F). When determining the severity of the claimant's cardiac impairments and the extent of limitation they imposed of his functioning, I found this document was not persuasive, as limitations to which she opined were not supported by her treatment notes on the claimant. For example, Dr. Gill wrote the claimant "gets tired" and would need require more than the standard number of breaks during the workday to lie down (*id.*). However, the day the cardiologist completed the questionnaire, the claimant met with her for a six-month follow-up appointment and reported having a good energy level (Exhibit 6F, p. 4). He told her he was feeling well and denied daytime sleepiness (Exhibit 6F, p. 7). The claimant also told denied decreased exercise tolerance and dyspnea (Exhibit 6F, p. 5). The record as a whole lacks sufficient support for a need for excessive breaks.

[R. 31-32.] Plaintiff argues that it was error under the Social Security regulations for the ALJ to discredit the entirety of Dr. Gill's 2018 opinion, while only discussing the supportability and consistency of one aspect of that opinion, which was that Plaintiff required three to four unscheduled breaks of 15 to 30 minutes during a typical workday, because he got tired. [Dkt. 21, Pl.'s Mem. at 10-11.] This Court agrees.

7

Plaintiff's need for breaks was only one area in which the ALJ's RFC differed from Dr. Gill's opinion as given in the 2018 Questionnaire. The limitations noted in the questionnaire response differ from the RFC found by the ALJ in four meaningful respects:

- **Unscheduled breaks.** Dr. Gill wrote that Plaintiff would require three to four unscheduled breaks, each of 15- to 30-minute duration, during a typical workday because Plaintiff tired easily; the ALJ found that no such breaks were required based on the totality of the medical evidence;

- **Limitations on standing and walking.** Dr. Gill indicated that Plaintiff could walk two blocks without rest or significant pain and could sit eight hours in an eight-hour workday but could only stand or walk for about two hours; the ALJ found that Plaintiff had no limitations on his ability to sit, stand, or walk through an 8-hour workday and, while precluding him from work that required balancing, the ALJ concluded that Plaintiff could perform frequent climbing on stairs, stooping, crouching, kneeling, and crawling.

- **Lifting over 10 pounds.** Dr. Gill's responses indicated that Plaintiff could occasionally lift or carry up to ten pounds, but could never carry twenty pounds or more; the ALJ found that he could occasionally lift and/or carry up to 20 pounds and 10 pounds frequently;

- **Reaching limitations.** Dr. Gill wrote that Plaintiff was restricted to less than 50 percent reaching with his right arm and less than 10 percent reaching with his left arm; the ALJ accounted for this somewhat (though not entirely) by assessing a postural limitation that Plaintiff never climb ladders, ropes, or scaffolds, which the

ALJ said took into account Plaintiff's decreased ability to reach overhead and maintain grip.

[*Compare* R. 652 with R. 28.]

If any one of these four limitations had been accepted by the ALJ, Plaintiff would have been found disabled, as follows. At the hearing, the VE testified that no jobs existed in the national economy for a person who, in addition to the RFC found by the ALJ, also required 3 to 4 unscheduled breaks. [R. 95.] Likewise, an individual with the RFC found by the ALJ would be disabled if they also were limited to only occasional reaching, handling, and fingering with the left arm (regardless of whether that was a dominant or non-dominant extremity). [R. 95-96.] If the ALJ had adopted either of Dr. Gill's proposed limitations on lifting or walking/standing, Plaintiff would have been relegated to sedentary work and automatically deemed disabled under the regulations due to his age.[4]

The Commissioner argues that the ALJ was not required to explain his assessment and rejection of each discrete part of Dr. Gill's opinion. [Dkt. 25, Def's Mem., at 6.] But the ALJ *does* have an overarching responsibility to explain his decision regarding the connection between a medical opinion and the RFC, with enough thoroughness and clarity as is necessary for the Court to assess whether the ALJ's conclusions in the RFC are supported by substantial evidence.

---

[4] Under the regulations, a person engaged in "light work" must be able to frequently lift up to 10 pounds and sometimes up to 20 pounds, do a good deal of walking or standing or, if the job involves sitting most of the time, some pushing and pulling may be required. § 404.1567(b). If a person is unable to substantially do those activities, they may be limited to sedentary work. *Id.* At the time of his amended onset date in November 2018, Plaintiff was 53 years old and considered a person "approaching advanced age" under the regulations. 20 CFR Appendix 2 to Subpart P of Part 404(g). A finding of disabled "ordinarily obtains" for persons approaching advanced age and limited to sedentary work who can no longer perform past relevant work and do not have transferrable skills. *Id.*; *see also id.* Table 1, Rule 201.14.

*Scrogham*, 765 F.3d at 695. This includes addressing evidence that does not support the ALJ's conclusion and explaining why he rejected it. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see, e.g., Grazyna C. v. Kijakazi*, No. 3:21-cv-50030, 2022 WL 2802336, at *3-4 (N.D. Ill. July 18, 2022) (ALJ erred in not explaining why she did not adopt a significant limitation opined by state agency physicians). Moreover, Social Security Ruling 96-8 explains that an ALJ's RFC assessment "must always consider and address medical source opinions" and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

### *Unscheduled Breaks*

In finding Dr. Gill's 2018 opinion unpersuasive, the ALJ only directly discussed the supportability and consistency of one limitation stated in that opinion—Plaintiff's need for unscheduled breaks. The ALJ explained that he was rejecting that limitation because it was inconsistent with and unsupported by Dr. Gill's own treatment notes from the very same day that Dr. Gill filled out the questionnaire. [R. 31-32.] Those treatment notes showed that Plaintiff had presented with a good energy level that day and said he was feeling well, while denying any daytime sleepiness, decreased exercise tolerance, or shortness of breath. [R. 32, 657-60.]

This Court finds that the ALJ's explanation for rejecting Dr. Gill's opinion regarding unscheduled breaks was sufficient. With regards to Dr. Gill's opinions on Plaintiff's other limitations, however, the ALJ failed to include any discussion of why he was rejected those opinions. *See, e.g., Jomarie S. v. Kijakazi,* No. 20-CV-7029, 2022 WL 2105916, at *4 (N.D. Ill. June 10, 2022) (finding that while certain portions of doctor's opinion regarding epilepsy diagnosis were at odds with the record, this did not render entire opinion unsupported or inconsistent with the record).

10

*Lifting and Reaching Limitations*

The ALJ's opinion does not explain why he rejected Dr. Gill's opinions regarding reaching and lifting limitations, nor does he explain why he rejected other evidence in the record that supported these opinions. For example, Plaintiff testified at the hearing that, since 2018, he experienced a "shocking numbness" whenever he would reach or grasp with his left arm. [R. 70-71, *see also* 48, 52, 63-64.] He explained that, since he is right-handed, he "didn't notice it too much at first," but when it did happen, it was "a shooting pain, like electrical bolt, and then my arm would go numb. Like, my whole left side … and that would last, you know, 40 minutes, as the pain, like needles and pins, but then it would go away, as long as I didn't reach again." [R. 71.] He testified that those symptoms continued and had not improved by the time of his hearing in March 2020. [R 63-4.] He explained that, while he could potentially grip a pen with his left arm [*id*.], reaching above his head would cause his left side to "almost…get paralyzed, and my arm would drop if I was changing a light bulb or doing something like that." [R. 52-53.]

The medical records provided support for Plaintiff's testimony about the left extremity problems, which were likely caused by degenerative disc disease in his spine. In December 2018, just a month after Dr. Gill's questionnaire was filled out, Plaintiff was seen in the emergency room for intermittent burning pain in his left arm and leg. [R. 775-85.] A CT scan of the cervical spine was conducted and demonstrated multilevel degenerative disc disease, more pronounced on the left side, which "[m]ay [sic] because of pt's intermittent L arm paresthesias." [R. 782-3.] The discharge diagnosis from this visit was "parasthesia of left upper and lower extremity, cervical radiculopathy due to degenerative joint disease of spine." [R. 796.] Plaintiff was prescribed a Medrol pack—commonly an arthritis medication—and recommended to follow up with a primary care physician. [R. 782-3, 788.]

11

After the December 2018 ER visit, there were no medical notes in the record relating to treatment for Plaintiff's degenerative disc disease again until September 2019, after Plaintiff suffered a fall at his daughter's wedding.[5] The day after the fall, Plaintiff was admitted to the hospital, where it was determined that he had multiple fractured ribs. [R. 855, 868-9]. Shortly thereafter, a CT study of his cervical spine was conducted, which again showed multilevel degenerative changes in the spine, most pronounced at C4/C5. [R. 848.] At C4/C5, the scan found, among other things, moderate disc bulge and severe left and mild right foraminal stenosis. [Id.] Another CT scan in March 2020, following more falls by Plaintiff, showed disc space loss at C4-C5, C5-C6, and C6-C7. [R. 958.] At C4-C5, there was "bilateral uncovertebral joint hypertrophy left greater than right as well as moderate to severe central canal narrowing." [Id.] The radiologist further suspected some impingement on the left C5 exiting nerve route. [Id.]

It's worth noting that, although the ALJ found the opinions of the consultative examiners "very persuasive," he chose to assess more restrictive non-exertional postural and environmental

---

[5] While the ALJ never explained why he was discrediting Dr. Gill's opinion that Plaintiff had lifting and reaching restrictions or Plaintiff's testimony regarding his limitations, one clue might be in the ALJ's comment about this gap in treatment, made in another section of the opinion. [R. 20 ("There was no evidence prior to this accident (the September 2019 fall) that showed the claimant routinely seeking treatment for lower back pain or problems associated with a lumbar spine disorder"), 22 ("If the claimant followed up on those instructions (to follow up with primary care physician and neurologist after December 2018 ER visit), the treatment notes from those appointments did not appear to have been submitted to the record.").] Perhaps the ALJ intended to imply that, since Plaintiff did not actively seek treatment for spinal disorder or pain caused by it, the condition was not serious enough to be disabling. Such a conclusion could be countered, however, by another note in the December 2018 ER visit record, where Plaintiff explained that he believed he could not see a primary care physician for the left extremity pain, even when his cardiologist had recommended that he do so *prior* to the December 2018 ER visit, because he owed the hospital money. [R. 779.] *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ must not draw inferences from failure to obtain treatment unless ALJ has explored reasons for it with claimant, and "inability to afford treatment is one reason that can provide insight into the individual's credibility"); SSR 16-3p (one factor in assessing individual's treatment history is their "ability to afford treatment").

limitations than the examiners recommended, based on Plaintiff's testimony and the objective evidence. [R. 31.] With regards to reaching, the ALJ added a limitation on climbing ladders, ropes, and scaffolds, explaining about the potential strain that pulling and reaching might cause given Plaintiff's cervical spine impairment. [R. 30.] This explanation further begs the question, however: given the ALJ's apparent acceptance that Plaintiff had a cervical spine impairment, should Plaintiff also have been limited in reaching, even occasionally or under certain circumstances, due to that same spinal impairment? Crucially, the vocational expert testified that if a person with Plaintiff's RFC was further limited to only occasional reaching, handling, and fingering with the left, non-dominant extremity, there would be no full-time employment available for that person. [R. 95-6.]

In sum, the medical record contained evidence that supported Dr. Gill's opinion as to Plaintiff's reaching and lifting limitations, and the ALJ did not provide a sufficient explanation to allow the Court to follow his reasoning for rejecting Dr. Gill's opinions on those limitations. *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) (quoting *Butler*, 4 F.4th at 501) (an ALJ "must provide a 'logical bridge' between the evidence and his conclusions.").

***Limitations on Walking and Standing***

As with Dr. Gill's opinions regarding reaching and lifting, the ALJ failed to sufficiently explain his reasoning for rejecting Dr. Gill's opinion that Plaintiff could not walk or stand for more than two hours. This is a somewhat closer call, as elsewhere in the opinion, the ALJ did explain that he was rejecting Plaintiff's self-report at his consultative examinations of symptoms that would limit standing and walking, such as balancing issues and shortness of breath, and instead found that Plaintiff could do light work. In so doing, the ALJ pointed to treatment notes spanning from March 2016 through January 2019 where Plaintiff repeatedly denied symptoms of dizziness, lightheadedness, syncope, and near syncope. [R. 29, citing R. 449, 458,657, 660, 664, 827, 862-

13

63.] The ALJ further noted that, when Plaintiff met with an occupational therapist in March 2020, the therapist noted good dynamic balance when standing. [R. 29, citing R. 952.] Similarly, the cardiologist notes from before and after his consultative examination show Plaintiff routinely denying any symptoms of shortness of breath or dyspnea with exertion, decreased exercise tolerance, dizziness, chest pain, or fatigue. [R. 30, citing R. 657-8, 662, 827, 837, 839.] These same records may have formed the basis of the ALJ's decision to reject the walking and standing limitations assessed by Dr. Gill, but it is not for this Court to guess at the reason—the ALJ must explain it and provide a logical bridge that the Court can evaluate. *See Wilder*, 22 F.4th at 651.

For these reasons, the case is reversed and remanded. Because the ALJ's failures to adequately explain his reasons for rejecting Dr. Gill's medical opinions regarding lifting, reaching, walking, and standing on their own warrant remand, the Court need not evaluate the remaining issues raised by the Plaintiff. On remand, however, the Administration should not construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 21] is GRANTED, and the Commissioner's motion for summary judgment [dkt. 25] is DENIED. **The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.**

SO ORDERED.

Dated: 3/29/23

*[signature]*

BETH W. JANTZ
United States Magistrate Judge